May it please the court, this case doesn't involve the Constitution or large corporations or millions of dollars, but it is very important to a woman by the name of Jeanie Lawrence in Arkansas. Ms. Lawrence can no longer continue working due to the combined effects of pain in her neck, her shoulder, and particularly her right upper extremity. She has sought frequent treatment, she's undergone occupational and physical therapy, she's even had surgery on her shoulder and biceps. The ALJ found that her condition limits her to sedentary work, but that she can perform frequent handling with her right arm. This latter restriction is the focus of our appeal. It's a narrow issue, but nevertheless an important one, and that is whether substantial evidence on the record as a whole supports the ALJ's finding that Ms. Lawrence can perform frequent handling. This is important because the ALJ relied on vocational expert testimony at step five of sequential analysis. The VE had identified two jobs that Ms. Lawrence could perform given the hypothetical limitations the ALJ prescribed. Both of those jobs require the ability to engage in frequent handling, so if she is unable to perform frequent handling, if the ALJ's finding as to that effect is not supported by substantial evidence, then the commissioner has failed to carry his burden at step five. Now, the record indicates that Ms. Lawrence suffers from significant pain, numbness, and tingling in her right dominant arm. There is objective evidence, clinical findings, and even her limited activities and testimony all support that. The objective evidence is there was an MRI that was conducted in March of 2017, which showed medial subluxation of the ulnar nerve at the cubital tunnel, which is a basis for diagnosing both carpal and cubital tunnel syndrome. There have also been significant clinical findings by the doctors and physician assistants who have treated Ms. Lawrence. Physician assistant Pooja Peters, in July of 2016, found highly positive tunnel signs in both wrists. He also noted markedly positive spurling tests, which is a test for cervical pain radiating into your arm, and he diagnosed as a result cervical spondylosis, cervical radiculopathy, and bilateral carpal tunnel syndrome. So her pain could be coming both from problems with her neck and also the carpal tunnel syndrome. Now, Dr. Gwynn, who began treating Ms. Lawrence in early 2017, he saw her in March and April. He's an orthopedist. He was treating her specifically for her hand and arm pain, and on both occasions, in March and April 2017, he noted that Ms. Lawrence had pain with all range of motion and stress tests, and he noted that she was still having pain despite being fitted and wearing an orthostatic splint on her right arm. Now, Ms. Lawrence also testified that her husband helps her to bathe, to dress. He drives. He does all the driving. She may accompany him to the grocery store, but he does all of the putting of the food in the baskets and things like this, and she also testified that her children do most of the chores around the house. Is there a difference in the assessment of the frequent handling between the hand and the elbow part and the shoulder? Are you distinguishing those in terms of the medical evidence that supports the disability or the limitation? Yes. Typically, the postural limitations are formulated as to reaching and handling, and then fingering the more fine manipulation. Handling is the gross manipulation. Is that more of the lower arm then, the elbow? Yes, more of the handling, but it would involve some obvious movement of the upper arm as well. It's essentially gross manipulation. The ALJ found here that she could perform frequent handling with her right upper extremity. There were no limitations placed on reaching, handling, or fingering with the left extremity, only that she could not reach overhead with her right extremity, apparently due to her frequent handling. Frequent means up to two-thirds of the work day, five days a week. Yes, there is a distinction between reaching, handling, and fingering. In this particular case, the ALJ's finding was limited to handling, and that's what we're arguing that has no ... Then the medical evidence that we're really focusing on is the elbow, the carpal tunnel. Elbow wrist. Yes, the bottom part of the arm. Although, her other conditions, the condition with her neck, the condition with her shoulder, also can cause pain radiating down into that area, what they call the radicular pain. For example, Dr. Throtmorton, who was her orthopedic surgeon that did the operation on her shoulder and biceps, said that the surgery would not deal with her radicular pain problem. It would correct the pain that she was having with her shoulder and biceps, but it would not correct any sort of radicular pain. Her pain can come from ... I think the medical evidence suggests that her pain comes from two sources. One, up above the arm based on shoulder and neck problems, and then number two, from her elbow and her wrist dealing with her carpal tunnel and cubital tunnel symptoms in that regard. Our question here is, what is the evidence, much less substantial evidence, supporting the ALJ's finding that she can engage in frequent handling in light of the objective evidence, the clinical evidence, her testimony, all which seem to indicate that she has significant problems with her dominant arm. We ask the court to reverse on that issue. I'll reserve the rest of my time for rebuttal. Thank you. You may. Thank you. Ms. Romani? May it please the court? My name is Tracy Romani, and I represent Andrew Soll, the Commissioner of Social Security. Your Honors, this is a very simple case. The sole issue before you is whether substantial evidence supports the ALJ's finding that Ms. Lawrence could perform frequent handling with the right upper extremity. Now, the Supreme Court recently addressed the substantial evidence standard as it pertains to agency fact-finding, and it held that the threshold for this standard is not high. In this case, the ALJ's decision easily clears this not-high threshold. I'd like to initially point out, however, contrary to what Ms. Lawrence has argued and has asserted in her brief, one of the jobs the ALJ identified at Step 5 does require only occasional handling. And that is the call-out operator job. But in any event, Your Honors, Ms. Lawrence's examination findings show that she could perform frequent handling with the right upper extremity. Ms. Lawrence has emphasized her complaints of pain, but her examinations show that she had 5 out of 5 strength in the upper extremities, no motor or neurological deficits, and normal movement of all extremities. The ALJ also considered that Ms. Lawrence's shoulder improved with surgery. After surgery, she reported that she was doing well with regard to the right shoulder and experiencing reduced levels of pain. Now, Ms. Lawrence has argued that much of the evidence the ALJ considered pertaining to the right shoulder did not specifically address the right hand and arm, and therefore her ability to handle. However, it's important to keep in mind that she originally alleged disability due to her shoulder impairment. The record also indicates that many of the right hand and arm symptoms that she complained of stemmed from or were related to her right shoulder. Thus, the improvement of her shoulder with surgery was a relevant consideration in terms of her ability to handle. What about the carpal tunnel? Was that addressed sufficiently by the ALJ? So, I think the main point is that she was diagnosed with carpal tunnel I believe in 2016 or 2017, but she only received conservative treatment through injections and I believe a carpal tunnel brace, which this court has held as conservative treatment. But even despite the diagnosis, which is not disabling, her actual examination findings show 5 out of 5 strength, no neurological deficits, normal movement of all extremities. And those examinations pertain to the entire upper extremity, so that would include her right hand and arm. So, despite a diagnosis, the objective evidence supports the ALJ's determination regarding handling. The ALJ also considered Ms. Lawrence's diagnostic findings. In particular, a 2015 EMG of her upper extremities was normal. In 2016, her right shoulder x-ray, also normal. And a right shoulder MRI showed only mild and minimal findings. In 2017, her right elbow x-ray, also normal. And the MRI of her right elbow did show a sublaxed ulnar nerve, but only some mild tendonitis. And after reviewing the MRI, her orthopedist specifically noted that her triceps were in good condition. Thus, as with the normal upper extremity examinations, Ms. Lawrence's unremarkable diagnostic findings support the ALJ's RFC finding in this case. Finally, Ms. Lawrence's activities show that she could frequently handle with the right upper extremity. In April of 2016, she told the agency that she could clean, drive, shop, make meals, walk her dog, and care for her children. Now, the agency does acknowledge Ms. Lawrence's statements that she received help in performing some of these activities. But given the unremarkable objective evidence, her ability to perform this wide range of activities, even assuming she received some help, is inconsistent with her claim to the agency that she's completely unable to use her right arm. Ms. Lawrence has also relied heavily on her March 2017 testimony that she no longer performed or did not perform many of these activities. However, Your Honors, there is simply no objective evidence of a decline in Ms. Lawrence's condition between her 2016 function reports to the agency and then her 2017 testimony that would support such a significant decline in terms of her daily activities. I'd point out that in recommending that the district court affirm the ALJ's decision, the magistrate judge specifically stated that Ms. Lawrence's 2017 testimony was inconsistent, both with her earlier function reports, as well as the objective evidence, which did document improvement, in particular, following the shoulder surgery. Thus, Your Honors, substantial evidence, including Ms. Lawrence's normal upper extremity examinations, her unremarkable diagnostic findings, as well as her improvement with surgery and her daily activities, support the ALJ's finding that she could perform up to frequent handling with the right upper extremity. Ms. Lawrence's arguments to the contrary are simply a request that this court reweigh the evidence, which it has, of course, consistently declined to do. The ALJ's decision here easily passes the substantial evidence standard, which, again, the Supreme Court has recently articulated is not a high burden. And again, I'd point out that ultimately, even if this court finds error with regard to a frequent handling limitation, ultimately, the ALJ did find that Ms. Lawrence could perform one job that requires only occasional handling. Again, that's the call-out operator job, Your Honors. Therefore, the commissioner respectfully requests that this court affirm the ALJ and district court's decision and deny Ms. Lawrence's appeal. Thank you. Thank you. Professor Wallace, rebuttal? May it please the court, just a couple of quick points on rebuttal. First, the commissioner suggests that she's only had conservative treatment, not really anything wrong with her hand. Well, Dr. Gwynne noted twice in April and March of 2017 that she was having pain. Now, this is a clinical finding, pain in all ranges of motion and stress test. So this is something a little more serious than the commissioner lets on. The normal nerve conduction study in April of 2016, Hootje Peters, the physician assistant, specifically addressed that. He said this was before she began having severe pain, and that was in, as a medical record, in May of 2016, before she began having severe pain in her right arm. The improved shoulder, again, I go back to Dr. Throckmorton, who did the surgery. He said, first of all, that this is not going to improve your radicular pain. It will deal with the arthroscopy and tenodesis would not address the radicular. And in February 2017, Dr. Throckmorton specifically noted that she was doing well in her shoulder, but she was still having pain in her right elbow. So just because she had improvement in her shoulder doesn't mean the pain in her elbow went away. The x-ray that the commissioner emphasizes in March of 2017, x-rays are not diagnostic for carpal tunnel problems. The MRI is the most reliable evidence in that regard. And with respect to her daily activities, it's more than she just needs help. In that same statement that the commissioner cited to you, she said, I have trouble dressing, bathing, caring for my hair, I eat with my left hand, I cannot cut meat, I cannot make beds, sweep, mop, wash the dishes. More than just, well, I need a little help doing these things. Thank you, Your Honor. Thank you.